**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SUE A. LANCASTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-07-483-F |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Sue A. Lancaster ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her application seeking disability insurance benefits in November, 2003 [Tr. 78 - 81]. She alleged that a back injury, chronic pain syndrome, fibromyalgia, two shoulder surgeries, and pain in her knees, back, arms and legs resulted in disabling limitations in walking, sitting, standing, using her right arm, reaching overhead, or lifting over sixteen (16) pounds as of May 17, 2002 [Tr. 110]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 54 - 56 and 59 - 62]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted a February 2006 hearing where Plaintiff, who was represented by counsel, and a vocational

expert testified [Tr. 45, 52 and 479 - 505]. In her June 2006 decision the ALJ found that Plaintiff retained the capacity to perform her past relevant work as a cashier supervisor and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 16 - 23]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 5 - 8], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

2

expected to last for a continuous period of not less than 12 months." 42 U.S.C.§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

**Analysis of Plaintiff's Claims of Error**

**Alleged Failure to Include All of Plaintiff's Limitations in the RFC Assessment**

Plaintiff's initial claim of error is that the ALJ failed to include all of Plaintiff's limitations in the assessment of Plaintiff's residual functional capacity ("RFC").[1] In this connection, Plaintiff has made the following specific claims.

Plaintiff maintains that while the ALJ found Plaintiff "capable of performing a range of sedentary work activity including the ability to lift and carry ten pounds occasionally and less than ten pounds frequently[]" with the ability to "climb, balance, kneel, stoop, crawl and crouch occasionally" and to perform "no overhead work with the right upper extremity[,]" [Doc. No. 13, pp. 8 -9], "[t]here is no evidence in the record to

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a) (1).

indicate where the ALJ arrived at the above conclusion." *Id.* In addition, Plaintiff contends that this RFC requires abilities greater than those she possesses.

It is not entirely clear what Plaintiff intends when she argues that no evidence indicates "where" the ALJ "arrived at the above conclusion." *Id.* at 9. A review of the decision reveals that after summarizing the medical evidence [Tr. 18 - 19], the ALJ assessed Plaintiff's RFC based on the objective medical evidence, the opinion evidence, and Plaintiff's credibility [Tr. 20]. As to the particulars of Plaintiff's functional limitations, the ALJ stated that she had considered – as required – the opinions of record by the State agency medical consultants as expert opinion evidence in this case [Tr. 22]. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *2; 20 C.F. R. § 404.1527 (f). It was the opinion of both physicians of record that Plaintiff was capable of performing a full range of work at the light exertional level[2] [Tr. 319 - 326]. The ALJ did not ultimately agree with the experts' conclusion that Plaintiff could perform light work because medical records received after the State agency determination suggested that Plaintiff's impairments limited her to sedentary work activities with restrictions[3] [Tr. 22]. Nonetheless, these opinions – evidence specifically considered by the ALJ – constitute a determination that Plaintiff is capable of performing both light and sedentary work. *See* 20 C.F.R. §404.1567 (b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

---

[2]*See* 20 C.F.R. § 404. 1567 (b).

[3]The ALJ also relied on Plaintiff's credible testimony – that she experienced pain and discomfort – at the evidentiary hearing [Tr. 21 and 22].

Moreover, the ALJ also expressly stated in her decision that in establishing Plaintiff's RFC she had considered the opinion of Plaintiff's treating physician, Dr. Kevin W. Hargrove, who determined that Plaintiff could perform light work [Tr. 22 and 277]. Dr. Hargrove made this finding based on a functional capacity evaluation completed by Plaintiff. He specifically found that

> The patient's lifting restrictions should be zero, based on the FCE, from floor to waist level. From sixteen inch to waist level, sixteen pounds, from waist to eye level, eighteen pounds. Two handed carrying abilities are eighteen and a half pounds. One handed carrying abilities on the right sixteen pounds and on the left sixteen pounds. Pushing and pulling were judged to be twenty five pounds. Her grip strength on the right was forty four pounds and on the left fifty pounds. It was recommended that she never be involved in crawling or ladder climbing. It is recommended that she could occasionally do work which requires working arms overhead while standing. She could occasionally do work with activities that require work bent over sitting. Should could occasionally do work which requires squatting and crouching or repetitive squatting. She could occasionally do work which requires repetitive trunk rotation while standing. She could frequently do work which requires sitting and standing. She could frequently do work which requires bent over activities standing or stooping. She could frequently do work which requires kneeling or climbing of stairs. She could frequently do work arms overhead, while supine. She could frequently do work which requires walking. She could frequently do work which requires repetitive trunk rotation with sitting.

[Tr. 277].

The ALJ noted Dr. Hargrove's opinion that Plaintiff's work status was consistent with the FCE – light [Tr. 277] – and specifically concluded that her sedentary RFC assessment did not exceed that opinion [Tr. 22]. Thus, contrary to Plaintiff's claim that "[t]here is no evidence in the record to indicate where the ALJ arrived at the" RFC assessment [Doc. No. 13, p. 9], the ALJ's decision is fully reviewable with regard to the formulation of the RFC.

As to the claim that the RFC requires abilities greater than Plaintiff possesses, Plaintiff correctly argues that while her treating physician found that she should never crawl or climb ladders, *id.* at 10,[4] the ALJ found that Plaintiff was capable of occasionally performing these activities. The failure of the ALJ to prohibit these activities in the RFC, however, was harmless because Plaintiff's past relevant work as a cashier supervisor – the job which the ALJ found Plaintiff capable of performing at step four of the sequential process [Tr. 22] – requires neither climbing nor crawling.

At Plaintiff's administrative hearing, the vocational expert testified that Plaintiff's previous work as a cashier supervisor would be classified in the *Dictionary of Occupational Titles*[5] as a Cashier I with a code of 211.362-010 [Tr. 501]. As that job is generally performed in the national economy,[6] crawling and climbing are activities that do not exist, *see* DICOT 211.362-010, and "the agency accepts the Dictionary's definitions as reliable evidence at step four of 'the functional demands and job duties' of a claimant's past job 'as it is usually performed in the national economy.'" *Haddock v. Apfel,* 196 F.3d 1084, 1090 (10th Cir. 1999) (quoting Social Security Ruling 82-61, 1982 WL 31387, at *2). The crawling and climbing limitations imposed by Plaintiff's treating physician,

---

[4]Plaintiff references page 271 of the transcript in support of this claim. The undersigned presumes that Plaintiff intended to refer to page 277.

[5]The *Dictionary of Occupational Titles* or "DOT" as published by the Department of Labor is one of several publications from which the Social Security Administration "will take administrative notice of reliable job information." 20 C.F.R. § 404.1566 (d) (1).

[6]At step four, "claimant bears the burden of proving his inability to return to his particular former job and to his former occupation *as that occupation is generally performed throughout the national economy.*" *Andrade v. Sec'y of Health & Human Servs.,* 985 F.2d 1045, 1051 (10th Cir. 1993) (emphasis added). The ALJ specifically determined that Plaintiff was able to perform the Cashier I position "as generally performed." [Tr. 23].

6

therefore, do not prevent Plaintiff from performing her past relevant as a cashier supervisor as that work is generally performed in the national economy, and Plaintiff offers neither argument nor evidence to the contrary.  Thus, no reasonable factfinder – upon considering at step four how the work of a cashier supervisor is generally performed in the national economy – could have resolved the issue in any other manner, and the ALJ's failure to fully credit Dr. Hargrove's limitations in the RFC assessment is harmless error.  *See Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004).

Another specific limitation which Plaintiff argues was imposed by her treating physician but not included in the RFC assessment is that she could only occasionally do work requiring trunk rotation [Doc. No. 13, p. 10].  Dr. Hargrove's assessment was actually that Plaintiff could *frequently* do work requiring repetitive trunk rotation while *sitting* but that she could only *occasionally* do such work while *standing* [Tr. 277]. Nonetheless, while the ALJ did fail to include a restriction to occasional trunk rotation while standing, no such restriction is required in work at the sedentary exertional level. As explained by the *Dictionary of Occupational Title's* description of Plaintiff's Cashier I position, "[j]obs are sedentary if . . . standing [is] required only occasionally."  DICOT 211.362-010.  Thus, as Plaintiff would only be standing occasionally in her work, any work involving trunk rotation while standing would only be occasional as well.

Plaintiff also points [Doc. No. 13, p. 10] to the report of the consultative examining physician with its notation that, "The pt ambulates with a crutch when she walks on the right, secondary to her knee giving out.  With this crutch, she walks at a safe and steady gait, that is somewhat slow." [Tr. 302].  Plaintiff then argues that the ALJ made no

7

allowances for the assistive crutch and failed to demonstrate how Plaintiff could lift or carry items using a crutch. Finally, she maintains that "[t]here is no mention of this problem anywhere in the record." *Id.* Contrary to Plaintiff's claim, however, this observation by the consultative examiner that Plaintiff was using a crutch on the day of her examination is not a finding that a crutch had been medically prescribed for Plaintiff or that the consultative examiner concluded that Plaintiff needed to use a crutch to ensure a safe gait. Moreover, the ALJ specifically addressed and relied on evidence secured by the State agency in this regard from one of Plaintiff's physicians, Dr. Jeff Shadle [Tr. 19 and 328]. In correspondence with Dr. Shadle, the State agency stated that its review of his notes indicated that Plaintiff's gait was normal for the period from July of 2003 until February of 2004 [Tr. 328]. Dr. Shadle was asked to advise the State agency if Plaintiff's gait was normal without the use of an assistive device. *Id.* Dr. Shadle's response that Plaintiff's gait was normal without an assistive device constitutes substantial record evidence of that fact. *Id.* Plaintiff has failed to establish that the ALJ erred by failing to make "allowances for the assistive device" in the RFC. [Doc. No. 13, p. 10].

Plaintiff's final argument in connection with Plaintiff's RFC concerns Plaintiff's fibromyalgia diagnosis. *Id.* She claims that "[t]he ALJ mentions this diagnosis but fails to explain what effect his [sic] evaluation of the condition has upon the final RFC." *Id.* Plaintiff continues her argument in this same vein:

> The RFC appears to be an amalgamation of the assessments by treating physicians, the agency experts, and The [sic] ALJ himself [sic]. Claimant is limited in her activities due to the fact that she suffers from chronic, diffuse pain. The ALJ only briefly mentions the fibromyalgia diagnosis and

> moves straight on into the analysis of Plaintiff's credibility. The ALJ fails to look to the record for information relating to Claimant's fibromyalgia. Even if the ALJ determines Claimant's fibromyalgia is not a severe impairment, he [sic] still must consider the impairments related to it at step four when ccreating [sic] an RFC. And it is not entirely clear that the ALJ does not find fibromyalgia to be a severe impairment. He [sic] ambiguously finds claimant to suffer from The [sic] severe impairment of "disorders of bone and cartilage." (Tr. 18).

[Doc. No. 13, p. 10].

A review of the record indicates the ALJ considered the relevant medical evidence pertaining to Plaintiff's fibromyalgia:

> On April 8, 2002, Lance E. Rosson, D.O. reported that the claimant had a history of fibromyalgia. On January 15, 2004, Jeff Shadle, M.D. gave an assessment of fibromyalgia with diffuse trigger points over the posterior back and shoulders. She was restarted on Neurontin and the Paxil increased. On February 20, 2004, the claimant had tenderness to palpation over multiple pressure points on the anterior chest wall, shoulders, neck, back and presacral area; therefore, the Neurontin was increased, she was continued on Paxil and was to receive a Depo-Medrol injection. . . . The claimant was diagnosed with fibromyalgia and treated with Paxil and Neurontin. The Administrative Law Judge finds there is no evidence that the claimant has a severe impairment due to fibromyalgia.

[Tr. 19].

The undersigned has carefully reviewed the seven record references proffered by Plaintiff as bearing on Plaintiff's diagnosis of fibromyalgia [Doc. No. 13, p. 10]. One is an assessment of fibromyalgia by the consultative examining physician [Tr. 302], another is that physician's signature page [Tr. 303], two others are duplicate copies of Dr. Shadle's February 20, 2004, assessment as discussed by the ALJ [Tr. 331 and 463], one is another treatment note by Dr. Shadle [Tr. 332], and another is a July of 2003 treatment note from a Dr. Lockwood recording subjective reports and assessments of chronic pain and of a family history of lupus [Tr. 348]. The final record specified by Plaintiff is a far more

current treatment note by Dr. Lockwood - April, 2005 – who diagnosed Plaintiff not with fibromyalgia but with thoracic pain with radiculopathy, pain which Plaintiff reported she had experienced "for a few months." [Tr. 461]. Dr. Lockwood stated that he and the Plaintiff had discussed her "fibromyalgia" diagnosis and "determined that she was diagnosed by a doctor . . . who has since left the state." *Id.*

The ALJ recognized that Plaintiff had been diagnosed with fibromyalgia and treated with medication [Tr. 19]; she further recognized in formulating the RFC that Plaintiff suffered from pain and discomfort [Tr. 21]. Plaintiff has failed to point the court to any medical evidence establishing that Plaintiff was otherwise functionally limited. The ALJ did not fail to include all of Plaintiff's limitations in her assessment of Plaintiff's RFC, and Plaintiff has not established error in this regard.

**<u>Credibility Assessment</u>**

While Plaintiff acknowledges that great deference is ordinarily given to an ALJ's assessment of credibility, she contends that the assessment in this case was reached in error.[7] Specifically, Plaintiff maintains that

> In the case at hand the ALJ fails to engage in more than a superficial analysis of claimant's credibility. The ALJ fails to even mention claimant's specific testimony, finding it non credible while referring in general to its contents. (Tr. 21). The ALJ here fails to make an acceptable credibility *analysis.* He [sic] simply determines she does not believe claimant's subjective complaints but fails to provide any sort of justification for her findings.

---

[7]"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "However, [f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation and internal quotation marks omitted).

[Doc. No. 13, pp. 12 - 13]

Contrary to Plaintiff's claim, however, the ALJ made specific note of Plaintiff's testimony with regard to her symptoms and resulting limitations:

> The claimant testified that she was right hand dominate, could read, write and lives with her husband. The claimant said she was able to drive and could take short trips. She stated she was unable to work due to back pain, right shoulder, and pain in her knees. She said she could lift five pounds with her right arm and ten with both hands. She had problems with her knee giving out.

[Tr. 20]. Nonetheless, despite Plaintiff's claims of pain, "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). "Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citations omitted).

Here, the ALJ recognized that objective medical evidence of record established that Plaintiff had pain-producing impairments [Tr. 20 - 21]. Thus, the ALJ, as required, considered Plaintiff's allegations of disabling pain in order to "decide whether [s]he believe[d] them]. *Thompson,* 987 F.3d at 1489 (quotation omitted). In making this determination, an ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

The ALJ reviewed the objective medical evidence from 2002 and 2003 which showed a surgically repaired rotator cuff tear resulting in limitations in lifting, carrying, and reaching overhead [Tr. 20]. The ALJ observed that the consultative examiner also noted a reduced range of motion in Plaintiff's right shoulder. Nevertheless, although she gave credence to Plaintiff's difficulties with overhead reaching, lifting and carrying in formulating the RFC, the ALJ did not believe that the shoulder limitations were disabling, noting that Plaintiff's physician had released her as to her shoulder complaints without imposing functional restrictions precluding her ability to work [Tr. 21]. As to Plaintiff's musculoskeletal complaints, the ALJ acknowledged that Plaintiff had pain and tenderness but once again did not believe such symptoms were disabling. *Id.* She noted Plaintiff's 2002 diagnosis of lumbrosacral mechanical dysfunction and bilateral lumbar radiculopathy, her right knee surgery in 2003, findings of reduced flexion of the back, neck, right hip, and knee, and, in 2004, tenderness to palpation over multiple pressure points. *Id.* On the other hand, the ALJ observed that straight leg, Romberg's and Babinski's testing were negative, and that Plaintiff's range of motion was generally normal, as was her gait. Significantly, the ALJ specifically noted that Plaintiff was seen in an emergency room in August of 2005 for abdominal pain but voiced no musculoskeletal complaints [Tr. 21 and 409].[8] Plaintiff has not directed the court to medical evidence suggesting that her pain and discomfort were disabling, and her subjective claims of disabling symptoms are not substantiated by the record.

---

[8]This is consistent with another emergency department report from February, 2005 [Tr. 401].

In addition to contrasting Plaintiff's subjective complaints with the objective medical evidence, the ALJ considered other relevant factors including Plaintiff's testimony regarding her use of medication [Tr. 21]. In response to questioning at the administrative hearing about her use of pain medication, Plaintiff testified that she took Lortab occasionally [Tr. 498]. She testified that she did not need the medication everyday and experienced no side effects from its use [Tr. 499]. Further, the ALJ examined Plaintiff's daily activities – cooking light meals, performing light household chores, shopping, taking short trips – and found that such activities had not been "curtailed to an extent that would suggest an inability to engage in all work activity." [Tr. 21]. The ALJ's credibility determination is legally sound and supported by substantial evidence of record.

## **RECOMMENDATION AND NOTICE OR RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by December 17, 2007, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 26th day of November, 2007.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE